UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATONDRA COUSINS,

    Plaintiff,

  v.

CHIPOTLE MEXICAN GRILL,

    Defendant.

NO. 1:12-CV-292

**OPINION & ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 25) and the responsive memoranda (docs. 27 & 29), as well as Defendant's Motion to Strike Paragraphs 4, 6, 7, 8 & 9 from the Declaration of Tonya Whitfield (doc. 30) and the responsive memoranda (docs. 32 & 33). Because the Court finds that genuine issues of material fact exist as to whether Plaintiff's employment was impermissibly terminated on the basis of race and/or retaliation, the Court DENIES Defendant's motion for summary judgment (doc. 25). The Motion to Strike is DENIED as moot for the reasons discussed herein.

**I. BACKGROUND**

Plaintiff, an African American woman, was hired at Defendant's Cincinnati Fountain Square store on August 3, 2010

1

to work as both a crew member and on the restaurant's fax order line. A Caucasian woman, Stephanie Ochoa, was Defendant's general manager during Plaintiff's employment. According to Plaintiff and other employees, Ochoa frequently made derogatory comments to and about African American employees, including Plaintiff. For example, several African American employees, including Plaintiff, were watching Cincinnati's Martin Luther King Day parade through the store's window before the store opened. Ochoa loudly yelled at them, "Get your black asses back to work." Apparently Ochoa frequently used the term "black ass" when referring to Plaintiff, as in "What's your black ass doing?"

Ochoa also allegedly made comments such as, "I know why there's so many black people in here around this time. I know it's because the welfare and child support checks are out." And, in reference to Plaintiff, Ochoa allegedly said to other employees, "Have you ever seen someone with such dark skin?"

In addition, Ochoa allegedly failed to discipline other employees who made derogatory comments about African Americans. For example, the Caucasian kitchen manager in training told Plaintiff, "When you see black people come through the line, put chicken on the grill," and he told Plaintiff that he didn't want to close the store because he was afraid a black

2

man would rob him.  He was allegedly not disciplined for those comments.

Following company procedure, Plaintiff met with Ochoa and requested a transfer to a different location, saying that she could no longer tolerate the racist treatment she continually received at the hands of Ochoa, the kitchen manager in training and others.  Ochoa allegedly ignored Plaintiff's request to transfer and said that it was all "just fun and games" and that Plaintiff shouldn't take it seriously.

Eight days later, Ochoa terminated Plaintiff's employment.

Plaintiff then filed the instant action, claiming that her employment was terminated on the basis of her race, in violation of both federal and state laws, and/or that it was terminated as retaliation for her complaining about the racist atmosphere of the restaurant, also in violation of both state and federal laws.

## II. STANDARD

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

3

Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Fatton v. Bearden, 8 F.3d. 343, 346 (6th Cir. 1993), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1982); Street v. J.C.D. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant

4

may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must

5

present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31

6

F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**III. Discussion**

    **A. Plaintiff's Race Discrimination Claims**

A Title VII plaintiff utilizing circumstantial evidence must first make out a prima facie case of discrimination, typically by showing 1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) either that she was replaced by someone outside of the protected class or that similarly situated non-protected employees were treated more favorably.[1] Kuhn v. Washtenaw County, 709 F.3d 612, 624 (6th Cir. 2013). After the plaintiff has made out a prima facie case

---

[1] State-law-based race discrimination claims are generally construed in the same manner as those grounded in federal laws because Ohio anti-discrimination laws prohibit the same conduct as Title VII. Shoemaker-Stephen v. Montgomery County Bd. of Com'rs, 262 F.Supp.2d 866, 874 (S.D. Ohio 2003). Thus, the Court's analysis and decisions with respect to Plaintiff's federal Title VII claims apply with equal force to her state-based claims.

7

of discrimination, the employer must present a legitimate, nondiscriminatory reason for the termination. Id. The burden of production then shifts back to the plaintiff to show that the employer's proffered nondiscriminatory reason was pretextual. Id.

Here, Defendant argues that Plaintiff cannot meet her prima facie case because she fails to meet the fourth prong: Defendant contends that Plaintiff failed to adduce evidence showing that she was either replaced by someone outside the protected class or that someone outside the protected class was treated more favorably than she. The Court disagrees with Defendant's assessment of the record.

The prima facie requirement for making a Title VII claim "is not onerous," Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) and poses "a burden easily met." Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987). The prima facie phase "merely serves to raise a rebuttable presumption of discrimination by 'eliminat[ing] the most common nondiscriminatory reasons for the [employer's treatment of the plaintiff].'" Hollins v. Atlantic Co., 188 F.3d 652, 659 (6th Cir. 1999)(quoting Burdine, 450 U.S. at 253-54). It is "only the first stage of proof in a Title VII case," and its purpose is simply to "force [a] defendant to proceed with its case." EEOC

v. Avery Dennison Corp., 104 F.3d 858, 861-62 (6th Cir. 1997).

        Plaintiff here has adduced evidence from which one could reasonably conclude that she was replaced by someone outside the protected class. Specifically, Plaintiff points the Court to the hiring of Katherine Avalos, a Caucasian woman hired by Defendant on July 8, 2011 and notes that the decision to terminate Plaintiff's employment was made on July 6, 2011. Defendant counters that Plaintiff was not actually terminated until July 11, 2011, thus, it contends, Avalos could not have been Plaintiff's replacement. The Court finds this hair-splitting to run counter to the spirit of Burdine. The record indisputably shows that Ochoa memorialized her decision to terminate Plaintiff's employment on July 6, 2011. Although she did not present that decision to Plaintiff until July 11, it is not unreasonable to infer that Ochoa's decision to hire Avalos on July 8 was a decision to fill Plaintiff's position, which Ochoa knew would be open as soon as the termination formalities were complete. For the purposes of meeting the low burden of the prima facie requirements, this is sufficient in this case.

        Defendant offers as its nondiscriminatory reason for Plaintiff's termination that Plaintiff used her employee discount for her mother without first securing Ochoa's permission. The burden thus shifts to Plaintiff to show that

9

this reason was merely pretext.

A plaintiff can show pretext in three ways. See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083-84 (6th Cir. 1994). First, the plaintiff can show that the proffered reasons had no basis in fact. Manzer, 29 F.3d at 1083-84. This first type of showing consists of evidence that the proffered bases for the plaintiff's adverse treatment never happened, i.e., that they were false. Id. Second, the plaintiff can show that the reasons given by the employer were insufficient to motivate discharge. Id. This second showing ordinarily consists of evidence that other similarly-situated individuals were more favorably treated. Id. Third, the plaintiff can show that the defendant's proffered reason did not actually motivate the adverse action. Id. In order to make this third type of showing, the plaintiff must introduce additional evidence of discrimination. Id.

The Sixth Circuit has cautioned that courts should "avoid formalism" in the application of the Manzer test, "lest one lose the forest for the trees." Chen v. Dow Chem. Co., 580 F.3d 394, 400, n. 4 (6th Cir. 2009). Pretext, the court observed, "is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to

10

ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." Id.

Here, Plaintiff argues that Defendant's reason for terminating Plaintiff's employment was pretext for race-based discrimination because Defendant changed its reasons for firing Plaintiff during the course of this litigation, and Defendant treated other similarly-situated employees better than it treated Plaintiff. Specifically, Plaintiff notes that the termination paperwork she received includes the statement that "employee discount's [sic] are only for employees that work here and you are not aloud [sic] to use it on your friends at anytime [sic]."[2] Plaintiff then notes that Ochoa testified that she routinely approved the use of the employee discount for nonemployees and that subsequent to that testimony, Defendant now asserts that Plaintiff's employment was terminated because she failed to secure Ochoa's permission before using her employee discount for her mother.

Defendant contends that these reasons are not contradictory and that "the underlying violation remains the same—by not asking permission, Cousins violated the Employee 50%

---

[2] Plaintiff used her discount for her mother's order, and the record supports the conclusion that she did not first secure Ochoa's permission.

11

Off Discount" (doc. 29). Defendant's position, however, very much loses the forest for the trees. The record unequivocally supports the conclusion that the written reason for Plaintiff's termination (that she used a discount for a nonemployee, which is something that is never permitted) was false at the time it was written. Ochoa and others repeatedly testified that the employee discount was routinely used for nonemployees. Defendant's post-hoc attempt to recast Plaintiff's termination as "the underlying violation" of not first asking permission is, indeed, contradictory to the written explanation for her termination. If the real reason for Plaintiff's termination was her failure to first secure Ochoa's permission before using her employee discount, that is what should have been written. The fact that it was not, and that a false reason was given, is enough to cast doubt on the legitimacy of Defendant's explanation for Plaintiff's termination. Given that it is not clear from the record whether the requirement to secure permission ahead of time was, indeed, a requirement, or whether it was enough to get approval after the fact, and given that it is also unclear from the record whether the policy—whatever it actually was—was uniformly applied, the doubt is strong enough to show pretext here.

    As noted by the <u>McDonnell Douglas</u> court, "The language

of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." 411 U.S. 792, 800 (1973)(internal citations omitted). The Supreme Court previously recognized in Griggs v. Duke Power Co., 401 U.S. 424, 429 (1971) that "[w]hat is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." Id. at 430-431. Here, the record before the Court is sufficient for the Court to reach the conclusion that Plaintiff's race discrimination claims should survive summary judgment. If a jury believes the version of events put forth by Plaintiff, it would be a reasonable conclusion that she suffered invidious discrimination on the basis of her race, which is exactly what Title VII proscribes.

    **B. Plaintiff's Retaliation Claims**

In addition to prohibiting employment discrimination on the basis of sex, race, color, religion or national origin, Title VII makes it unlawful for an employer to retaliate against an employee because the employee either opposed any practice that Title VII made unlawful or filed a charge under Title VII.

13

42 U.S.C. § 2000e-3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006). In the absence of direct evidence, and none is presented here, the Court reviews Plaintiff's retaliation claim under the McDonnell Douglas framework. Weigel v. Baptist Hosp., 302 F.3d 367, 381 (6th Cir. 2002). To establish her prima facie case of retaliation, Plaintiff must show that: 1) she engaged in activity protected by Title VII; 2) Defendant knew that she exercised such rights; 3) Defendant took retaliatory action that a reasonable employee would have found materially adverse; and 4) there was a causal connection between the protected activity and the adverse action. Arendale v. City of Memphis, 519 F.3d 587, 606 (6th Cir. 2008); Burlington Northern, 548 U.S. 53, 68. As above, if Plaintiff is successful in demonstrating her prima facie case, the burden shifts to Defendant to produce evidence of a legitimate, nondiscriminatory reason for its actions. EEOC v. Avery Dennison Corp., 104 F.3d 858, 862 (6th Cir. 1997). If Defendant satisfies this burden, Plaintiff must then demonstrate that the legitimate reason offered by Defendant was a pretext designed to mask retaliation. Id. at 862.

Plaintiff's retaliation claims easily survive summary judgment. Plaintiff's meeting with Ochoa at which she requested a transfer because of the ongoing race-based comments

14

constitutes protected activity. See, e.g., Trujillo v. Henniges Automotive Sealing Sys. North America, 495 Fed. Appx. 651, 655 (6th Cir. 2012). And there is no dispute either that Defendant knew about the activity or that her termination was an adverse employment action.

With respect to the final prong, Plaintiff must have produced sufficient evidence to create an inference that the adverse action would not have been taken had she not engaged in the protected activity. See Univ. of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517, 2533 (2013)("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). Temporal proximity between the protected activity and the adverse action is not by itself always dispositive of the issue of causation, but it "always plays a role." Fuhr v. Hazel Park Sch. Dist., 710 F.3d 668, 675 (6th Cir. 2013). Here, only eight days passed between Plaintiff's meeting with Ochoa and Ochoa's written memorializing of her decision to terminate Plaintiff's employment. Under the circumstances present here, that temporal proximity is sufficient by itself to meet the causation prong of

15

Plaintiff's prima facie case. See Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008)("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.").

Finally, as discussed above, Plaintiff has adduced evidence sufficient to demonstrate at this stage that Defendant's proffered reason for Plaintiff's termination was pretextual, whether for race-based animus or as a retaliatory move for complaining about the race-based comments made by management.

Defendant's motion for summary judgment as to Plaintiff's retaliation claims is thus DENIED.

### c. Defendant's Motion to Strike

In its analysis of the record and the motions before it, the Court did not rely on the contested passages of the deposition that Defendant seeks to strike (doc. 30). Therefore, the Court denies the motion as moot. Should this case proceed to trial, the Court will rule on the admissibility of evidence in due course.

### IV. Conclusion

16

Plaintiff has adduced sufficient evidence to meet her prima facie case both as to her race-based discrimination claims and as to her retaliation claims and to show that Defendant's proffered reason for her termination was pretextual.  Therefore, Defendant's motion for summary judgment is DENIED (doc. 25).  This matter is set for a final pretrial conference on October 2, 2013 at 2:00 P.M., with a three-day jury trial to commence on November 12, 2013 at 9:30 A.M.


   SO ORDERED.

Dated:  August 8, 2013       s/S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge